IN THE UNTIED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (Manhattan)

UNITED STATES OF AMERICA, *ex rel*
Mr. and Mrs. SCHIANO,

    PLAINTIFFS and Relators,

v.                                                        **FILED UNDER SEAL**

WELLS FARGO & COMPANY, WELLS
FARGO BANK NA and WELLS FARGO HOME MORTGAGE,
and OCWEN FINANCIAL CORPORATION, OCWEN
LOAN SERVICING, LLC and OCWEN MORTGAGE
SERVICING, INC.,

    DEFENDANTS,

---

## COMPLAINT AND JURY DEMAND

Plaintiffs, SCHIANOS, as the Originating RELATORS, pursuant to the False Claims Act, 37 USC Section 3729, et seq., as private persons acting for the people of the United States and the United States Government, through his attorney's, Mahany and Ertl and Joseph C Bird, declare and allege the following as their FALSE CLAIMS COMPLAINT against the Defendants for civil damages [trebled] and penalties for the Defendant's submission of false and fraudulent records, claims, statements and representations of defaulted mortgage loans held by FREDDIE MAC which is now the United States Government as administered by and pursuant to the FEDERAL HOUSING FINANCE AGENCY (FHFA). All the loans that are the subject of this complaint and owned or insured by FREDDIE MAC and are/were insured by third parties in case of

default. The Defendants defrauded the government by initially fraudulently converting and diverting monies that were/are due FREDDIE MAC as the loan owner/holder or insurer/guarantor in anticipation of a refinancing of the original loan being serviced, then the Defendants further defrauded the government by falsely declaring the loans they serviced to be in default when in fact they had diverted the payments to themselves in order to declare and demonstrate a "default" to the government and provide a basis for an insurance payout of the loan at roughly 80% of its principal balance.

FREDDIE MAC declared defaults based on the payments diverted by the servicing agents, including specifically WELLS FARGO and OCWEN, and the loans about to be refinanced were paid off by insurers like GE or GENWORTH FINANCIAL to FREDDIE MAC at $.80 on the dollar. The Defendants then converted the loan payoff that should have been paid to FREDDIE MAC instead of insurance and assisted in the collection of the refinanced and fraudulently paid off mortgage loan from the borrower (or maintained it on their books and records as a cover up of the fraud), recovering 100% of the value of the loan times two. The net effect of the conspiracy was to allow the servicers for the investors (WELLS FARGO and OCWEN in this specific case), to defraud FREDDIE MAC by converting mortgage payments that should have been paid to FREDDIE MAC, and upon the mortgage insurance payment, convert the original loan payoff from the refinancing, all to the financial detriment of the United States by the Defendants, who conspired to share the proceeds of their fraud amongst themselves.

## INTRODUCTION

1. This is a civil fraud action filed on behalf of the United States of America to recover treble damages and civil penalties under the False Claims Act arising from fraud on the United States and specifically against FREDDIE MAC, a Government Service Enterprise [GSE], now operated by the United States of America <u>by the FHFA.</u> As set forth more fully below, WELLS FARGO and OCWEN have profited for years as residential mortgage servicers through their dealings with FREDDIE MAC, by falsely reporting defaults of insured loans to FREDDIE MAC which were in fact simply being refinanced, and then collecting the mortgage payoff and the payments that would have kept the loan current in order to create the false default.

2. During the course of their dealings with FREDDIE MAC, WELLS FARGO and OCWEN learned that FREDDIE MAC had insurance for the loans it purchased in the event of default by the borrower. WELLS and OCWEN also learned that when borrowers refinanced existing mortgage loans, they could, by fraud, keep the payoff check intended for FREDDIE MAC when refinancing was successful and have it sent to them instead, upon the closing of the new mortgage loan, by declaring the original mortgage to be in default to FREDDIE MAC, the rightful recipient of the payoff check. If the default prevented the refinancing from taking place, OCWEN or WELLS FARGO would continue to collect on the mortgage note from the defaulted borrower, as FREDDIE MAC had signed off and closed the loan once it was paid by insurance.

3. This "FALSE DEFAULT" scheme allowed WELLS FARGO and OCWEN (THE MORTGAGE SERVICING AGENTS) to obtain, <u>and continue to obtain through false defaults and refinancing payoff or failed refinancing and continued collection,</u> monies to which they were not entitled at the expense of FREDDIE MAC.

4. Plaintiff is the United States of America ("United States"). SCHIANOS are the RELATORS acting on behalf of the United States by filing this complaint. The Schianos are residents of the State of New Jersey.

5. Defendant WELLS FARGO & COMPANY, also d/b/a WELLS FARGO HOME MORTGAGE AND WELLS FARGO BANK, N.A., [hereinafter WELLS] is a corporate entity organized pursuant to the law of the State of Delaware and at all times acted as in investor or note holder in the above false default conspiracy scheme. WELLS FARGO is/and was both a mortgage bank and a mortgage servicing agent which has and continues to act as a servicing agent for FREDDIE MAC.

6. At all times relevant to this complaint, OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING LLC and OCWEN MORTGAGE SERVICING INC., is a corporate entity organized pursuant to the law of the State of Delaware and at all times acted as in investor or note holder in the above false default conspiracy scheme. OCWEN is/and was both a mortgage bank and a mortgage servicing agent which has and continues to act as a servicing agent for FREDDIE MAC

7. The department of Housing and Urban Development [HUD] is a cabinet department of the executive branch of the United States Government created in 1965 to administer the government's involvement in the mortgage industry including FHA mortgage insurance. The Federal Housing Administration is a separate agency, created in 1937 by Congress, to provide insurance on mortgage loans in order to encourage lenders to make mortgage loans. FREDDIE MAC was created by Congress in 1970 to stabilize and stimulate the home mortgage industry. As a GSE providing a secondary market for mortgage loans thereby facilitating lenders to make mortgage loans, FREDDIE MAC obtained insurance for all loans that it acquired, enabling it to support riskier loans that lenders would not otherwise make to borrowers.

8. FREDDIE MAC was taken over by the US Government circa 2008 pursuant to HERA, Public Law 110-289 [Conservatorship managed by the Federal Housing Finance Agency] as a result of severe losses suffered from defaulting loans that it purchase from lenders and servicers including WELLS and OCWEN. It is still engaged in the mortgage industry by facilitating the establishment of a market of the purchase and sale of mortgage loans and is actively involved in buying and selling mortgage loans brokered and originated by other entities and lenders. In this role, it is one of the largest holders of promissory notes secured by mortgages in the United States. The existence of insurance against loan default [implicit if not explicit] for loans held by FREDDIE MAC allows it to support HUD, FHA and VA initiatives to provide affordable housing in the United States.

## FACTUAL HISTORY OF SCHIANO MORTGAGES

9. The Schianos' purchased their home in 1987. Through a series of mergers and transactions, Bank of America became their mortgagor and note holder. In the year 2000, WELLS became the mortgage servicing agent for the Schianos' and Bank of America. Since the date of purchase through the date of filing the complaint, they have never been late or delinquent as to any mortgage payment.

10. Commencing in 2002, the SCHIANOS refinanced their existing mortgage, which was then owned by GE Capital Mortgage Services, the acting mortgagee or note holder, which was acquired by Bank of America Corporation in approximately 1995. GE mortgage servicing, however, was separated from GE Capital Mortgage Services and was sold to WELLS in the year 2000.

11. FREDDIE MAC was the original government investor/insurer on the Schianos refinanced loan. The Schianos were not aware, however, that FREDDIE MAC was the investor on their GE backed loan (investor/insurer), held by Bank of America and serviced by WELLS.

12. Just prior to the Schianos planned February 2002 refinance, which would normally cause the new lender to pay off the existing loan backed or insured by FREDDIE MAC, WELLS reported the Schianos in default to FREDDIE MAC, in its role as investor/insurer of the loan, despite fact that the Schianos had never missed a mortgage payment.

13. At the February 2002 refinance, the payoff check was diverted by WELLS from its rightful recipient, FREDDIE MAC, to an unknown entity. **See Exhibit 1**

14. A claim or mortgage insurance was then made by FREDDIE MAC, the government backed GSE investor/insurer, with GE or Genworth Financial, and the insurance was collected on the false default by FREDDIE MAC in the estimated amount of 80% of the principal balance.

15. WELLS collected the full amount of the loan payoff from the refinancing.

16. Since the year 2002, the Schianos have made a series of continuing mortgage payments to their loan servicers, including both WELLS and then OCWEN, the successor loan servicing agent for the original Bank of America loan, based on demands by the servicers despite the refinance and purported payoff of the loan, unaware of the false default reported to FREDDIE MAC.

17. The Schianos were unaware of the fraud perpetrated against them and FREDDIE MAC until April 2011 when they received a letter from the OFFICE OF THE COMPTROLLER OF THE CURRENCY (OCC) informing the Schianos of the 2002 FREDDIE MAC announcement that their loan, held by FREDDIE MAC was declared to be in default by FREDDIE MAC and paid out [insurance claim paid] by GE or GENWORTH in its capacity as the insurer to FREDDIE MAC to cover its guarantee of payment. **See Exhibit 2**

18. The false default reported by WELLS FARGO originally had caused FREDDIE MAC to seek immediate recovery from its insurer [GE or Genworth] at roughly 80% of the loan value and at the same time WELLS

negotiated the payoff check from the new lender paying off the balance of the loan IN FULL, a payment that should have been paid over to FREDDIE MAC as the insurer/investor.

19. WELLS kept the money that was owed to and should have been paid to FREDDIE MAC, depriving FREDDIE MAC of at least 20% of the payoff amount or about $35,000.00 and causing FREDDIE MAC to make a false and fraudulent claim to GE.

20. The Schianos refinanced twice in 2004 with both Fremont Home Loan in February, 2004 and again through Argent Mortgage Company (a broker) in October, 2004. **See Exhibit 3 (payoff of Fremont Loan)** Ultimately, the Fremont loan was sold and transferred into a securitized trust, Fremont Home Loan Trust 2004-B. The Argent loan was also sold into a securitized trust, Park Place Securities Inc., 2004-WHQ2. WELLS is the Master Servicing Agent for both the securitized trust 2004-B and the trustee for 2004-WHQ2.

21. OCWEN denies that it is currently "servicing" for Fremont as to the Schiano loan, but maintains it is "collecting" the monthly mortgage payments from the Schianos for the FREDDIE MAC REMIC 2859. **See Exhibit 4** Since FREDDIE MAC avers it is not the investor of this loan, it appears that OCWEN is collecting pursuant to a "false default" claim and scheme as to the Schiano note.

22. In the course of litigating the issue of the validity of their mortgage, and other related issues, *Schiano v. MBNA/Bank of America Corporation, et al,* case no. 05-cv-1771 (D.C.N.J.), the SCHIANOS have learned that WELLS and

OCWEN have employed this false default scheme to obtain the payoff amounts, and future collection of interest, taking advantage of FREDDIE MAC's reliance on their good faith and inability to verify the default and by removing any motivation by FREDDIE MAC to investigate by virtue of FREDDIE MAC's known ability to exercise its insurance rights to obtain payment. Both servicing agents profit on the diverted payments converted before the refinancing closing (if successful), collect the proceeds of the payoff (if refinancing is successful) and collect the remaining defaulted mortgage through reinstatement, foreclosure or other means, including recycling the mortgage through the GSE system again, selling it to both FANNIE or FREDDIE, now owned by FHFA, or other investors.

23. In the course of the litigation, the Schianos' have learned that the second 2004 loan refinance through Argent was reported by OCWEN as a "loan modification". The apparent purpose for falsely reporting or characterizing the refinance as a "loan modification" to various credit reporting agencies and in interstate commerce is to cover up the fact that the Fremont loan was replaced and paid off so that OCWEN and WELLS could continue to fraudulently collect monthly payments on a loan that had been paid off.

24. In furtherance of this fraud, WELLS received the attached check for the pay-off of the Fremont mortgage note. **See Exhibit 3.** The routing number on the check relates to a WELLS account at a branch in Arizona. The bank refused to reveal the identity of the account holder that received credit for the check. The cancelled check is oddly stamped "VOID" and the payee, Fremont Home

Loan Trust 2004-B has no record of receiving any check or pay-off in this amount.

25. In order to verify and restructure their mortgage debt, the Schianos applied to WELLS to refinance their existing mortgage on two separate occasions in 2013. Each time they received a mortgage commitment rom WELLS, but WELLS ultimately refused to refinance and issue a new mortgage claiming that the mortgage history and assignments and transfers had created an "invalid mortgage", precluding refinancing. **See Exhibit 5**

26. WELLS and OCWEN carefully calculated that when FREDDIE MAC held the note, that it was insured and that FREDDIE MAC would not attempt to independently verify the default with the maker, or servicer, of the loan or the home owner and mortgagor, as would non GSE lenders and note holders like themselves.

27. WELLS and OCWEN also carefully calculated that FREDDIE MAC would be satisfied with the insurance proceeds from a defaulted loan at 80% of value and that when the existing loan was paid off, they would receive the proceeds or payoff from the new lender even though they had sold the note to FREDDIE MAC because they were identified in the records of title as the mortgage owner and servicing agent and the transfer of the note for value to FREDDIE MAC was not recorded anywhere.

28. On a calculated but systematic basis, WELLS and OCWEN have and continue to prey on FREDDIE MAC and the United States by falsely asserting that loans which were in the process of being refinanced were in default, causing

FREDDIE MAC to seek payment from its insurer and allowing WELLS, and OCWEN to receive the payoff amount, and continue to collect false default interest, creating a double recovery of the loan amount based on fraud, with continued collection of diverted and converted funds that are due FREDDIE MAC.

29. The impact of the fraud perpetrated by WELLS and OCWEN continues today, including after the year 2008 when FREDDIE MAC was placed in government agency conservatorship or takeover. The effect of the fraud includes a double recovery by WELLS and OCWEN, including the loss of the difference between the amount paid by insurance and the actual loan payoff, and including continued collection of false default debt that has been purposefully and intentionally been diverted by WELLS and OCWEN from FREDDIE MAC.

30. These mechanisms of fraud perpetrated by WELLS and OCWEN were directly observed by the SCHIANOS and their counsel, Helen E. Cooney Mueller, during the course of their litigation, and from other original and unique information they received pertaining to the SCHIANOS' mortgage.

## JURISDICTION AND VENUE

31. This Complaint is submitted pursuant to 37 USC Section 3729. This court has subject matter jurisdiction pursuant to 28 USC Section 1331 and in particular pursuant to 28 USC Section 3730 (b).

32. Under 31 USC Section 3730 (e), there has been no relevant public disclosure of the allegations in this complaint with respect to which the SCHIANOS are an original source and all material information relevant to these allegations was provided to the US Government prior to the filing of this complaint in accordance with 31 USC Section 3730 (e) (4)(B).

33. Personal jurisdiction and venue exist pursuant to 28 USC Section 1391 (b) and 31 USC Section 3732 (a) which authorize nationwide service of process upon entities and individuals having minimum contacts with the United States. Moreover, the Defendants can be found in, transact business in [or have transacted business in] the Southern District of New York.

## **MORTGAGE SERVICING FOR FREDDIE MAC**

34. Both OCWEN and WELLS, at all times pertinent to this action, provided and continue to provide mortgage servicing to FREDDIE MAC pursuant to the agency Mortgage Servicing Guide and applicable regulations.

35. The Guide, as amended, contains 83 Chapters setting forth the duties and obligations of OCWEN and WELLS as to reporting and remittance of mortgage payments collected by OCWEN and WELLS for FREDDIE MAC.

36. The actual servicing contracts between WELLS, OCWEN and FREDDIE MAC incorporate by reference all of the duties and obligations set forth in the Guide including the duty to property remit to FREDDIE MAC and the duty to accurately and truthfully report changes in conditions of the mortgage note or the mortgagor's status to FREDDIE MAC. See, generally, Contract, Chapter 2, Failure to comply with Contract or Guide.

37. WELLS and OCWEN had a duty to remit all monthly payments received to FREDDIE MAC, including those received after reporting a default to FREDDIE MAC, those received after an insurance pay off to FREDDIE MAC and the proceeds of any refinance to the extent the proceeds exceeded any insurance payment.

38. WELLS and OCWEN also had a duty pursuant to contract and the Guide to not fraudulently report or declare a default of a loan to induce FREDDIE MAC to make an insurance claim and discharge or relinquish the loan being serviced and allow OCWEN and WELLS to recover the entire balance of the loan through a refinance of the loan by using its position as servicer.

39. OCWEN and WELLS breached their respective servicing contracts and the Guide by falsely declaring defaults, retaining monthly payments and not remitting FREDDIE MAC's share, by continuing to collect on loans that FREDDIE MAC received a partial payoff through an insurance claim and by collecting and receiving the payoff of a refinanced mortgage without remitting to FREDDIE MAC.

## FRAUD ALLEGATIONS

40. WELLS FARGO AND OCWEN are and were, at all relevant times, lending institutions and mortgage servicing companies under the federal regulations implementing HUD's single family mortgage insurance programs. WELLS sold and/or serviced many of its loans for FREDDIE MAC. OCWEN, as SCHIANOS current servicer, continues to collect the false FREDDIE MAC

default loan with pass through of false default loan collection interest to WELLS.

41. WELLS FARGO AND OCWEN provided or serviced mortgage loans to borrowers.

42. WELLS FARGO AND OCWEN agreed to conduct their business pursuant to all applicable regulations and by law was prohibited from certifying to FREDDIE MAC or any GSE or other government agency any claim of fact that was false or misleading.

43. WELLS and OCWEN, as to the relators, starting in 2001, knowingly failed to pay over mortgage loan payments received from borrowers on loans owned by FREDDIE MAC in order to create a basis, albeit fraudulent, to declare a default by the borrower.

44. WELLS and OCWEN kept the mortgage payments and payoffs made by relators in violation and breach of the servicing agreements.

45. WELLS and OCWEN then falsely and fraudulently certified to FREDDIE MAC that Plaintiffs were in default and knew that this would cause FREDDIE MAC to turn to its insurer and demand payment of the principal loan balance.

46. FREDDIE MAC was reimbursed for the falsely certified loan default by GENWORTH or GE.

47. As set forth above, WELLS FARGO was originally paid funds due FREDDIE MAC upon closing of the Plaintiffs refinancing mortgage loan in early 2002 and was paid the sum of $176, 269.22. **See Exhibit 1.**

48. WELLS FARGO failed to remit payoff funds from the closing refinance to FREDDIE MAC, and FREDDIE MAC failed to receive the full amount of the loan it had purchase from WELLS since the insurance was not a 100% payment.

49. Plaintiffs allege and aver that the scheme used by WELLS as to their loan with FREDDIE MAC was not a onetime occurrence. Rather, it is part of a carefully orchestrated plan to profit at the expense of FREDDIE MAC and the United States of America.

50. WELLS and OCWEN, who fraudulently continue to collect payments as part of the cover up on the false FREDDIE MAC defaulted loan, intentionally deceived FREDDIE MAC in order to double dip or receive payment for mortgage loans on the initial sale to FREDDIE MAC and again by converting the payoff on loans refinanced while being held by FREDDIE MAC, profiting unfairly by the deception and also depriving FREDDIE MAC of the uncovered portion of the defaulted loan, and continued collection of the loan and recycling of those defaulted loans, thus forcing the government to pay the insurance claims on all loans insured by the United States or otherwise paid by the United States and depriving the government, U.S. taxpayers, of the continued collection of SCHIANO interest paid on a false FREDDIE MAC default loan.

## COUNT I

## VIOLATION OF 37 USC, Section 3729 a (1) (B), (D) and (G)

51. By virtue of the acts described above, and in violation of 31 USC Section 3729 (a)(1)(A), (D) and (G), as for each and every declaration of default falsely created by WELLS and OCWEN and falsely reported to FREDDIE MAC, WELLS and OCWEN knowingly made, used or caused to be made or used, false records or statements material to a false or fraudulent claim for payment by the United States or to induce the submission of a false claim by the United States [Freddie Mac] to a third party.

52. The conduct is also a violation of 31 USC Section 3729 (a) (7), as an indirect reverse false claim. WELLS and OCWEN continue to profit at the expense of the United States taxpayers by continued collection of interest on the false and fraudulent default FREDDIE MAC loan.

53. FREDDIE MAC, in turn, declared defaults and submitted insurance claims based on those false defaults and also abandoned any claim to any loan payoff proceeds, and collection of future interest, on loans that it owned.

54. The Government, through FREDDIE MAC, sustained the loss of mortgage loans payments withheld and retained by WELLS and OCWEN in order to create the false default and also suffered the loss of the uncovered portion of the falsely defaulted loan upon submission to and payment by its insurer, in most cases the United States, and the government continues to be deprived of the collection of false default loan interest due FREDDIE MAC.

55. As a further direct and proximate result, the Government directly suffered the loss of the wrongfully paid insurance claim on each and every FREDDIE MAC loan that it insured, and continues to directly suffer the deprivation and

loss of all paying interest loans that, unbeknownst to the borrower(s) and FREDDIE MAC, were falsely placed in default and the collection of interest payments are currently owed to FREDDIE MAC.

56. Pursuant to the FCA, 31 USC Section 3729 (a) (1) (B), (D) and (G), WELLS and OCWEN are liable to the United States under the treble damage and civil penalty provisions for a civil penalty of not less than $5,500 and not more than $11,000 for each and every fraudulent claim plus three times the amount of <u>actual and continued damages</u> which the United States has sustained by virtue of the Defendants actions.

## COUNT II

## FALSE DEFAULT CERTIFICATION TO FREDDIE MAC AND VIOLATION OF FERA AND 31 USC 3729 (a) (7) BY REVERSE FALSE CLAIM

57. By virtue of the acts described above, and in violation of 31 USC Section 3729 (a)(1)(B) and (a) (7), as for each and every declaration of default falsely created by WELLS and OCWEN and falsely reported and certified to FREDDIE MAC and also knowingly made, used or caused to be made or used, false records or statements material to a false or fraudulent certifications for default on mortgage loans held by FREDDIE MAC and the United States, resulting in depriving FREDDIE MAC of the proceeds of insured defaulted

loans and of monthly mortgage payments diverted in order to cover up the false default declaration.

58. As a result of submitting innumerable false certifications of FREDDIE MAC loan defaults, and the diversion of monthly mortgage payments to create the false default, both in violation of their reporting and servicing obligations to FREDDIE MAC pursuant to the various servicing agreements, WELLS and OCWEN are liable to the United States for all losses on mortgage loans it paid as in insurer to FREDDIE MAC or where FREDDIE MAC received less than the payoff amount on the existing loan and for all diverted monthly mortgage payments retained by WELLS and OCWEN which were a cover-up for the false default (i.e. used to make it appear an actual default existed).

59. Moreover, as a direct and proximate result of the false loan default certifications to FREDDIE MAC all in violation of 31 USC Section 3729 (a)(7), WELLS and OCWEN are liable to the United States under the treble damage and civil penalty provisions of the FCA of not less than $5,500 and not more than $11,000 for each false or fraudulent certification of a default plus three times the amount of the actual and continued loss sustained by the United States.

WHEREFORE, the relator, on behalf of the United States, prays:

a. That the court award the maximum amount of damages and civil penalties supported by the facts and the claims and allowed under the Act including the maximum award as a relator;

b. The realtor be awarded costs and actual attorney's fees;

c. The court awards such other relief as is appropriate.

Respectfully submitted on this 18th day of September, 2014

By: _____
Michael M. Steinmetz
Bar No. M53164
Garson, Segal, Steinmetz, Fladgate, LLP
164 West 25th Street, Suite 11R
New York, NY 10001
Telephone (212) 380-3623
Facsimile (347) 537-4540

By: _____
Brian H. Mahany
Pro hac vice application pending
Mahany&Ertl
1437 Prospect Ave., Suite 200
Milwaukee, WI 53202
Telephone (212) 380-3623
Facsimile (347) 537-4540
brian@mahanyertl.com
Attorney for Plaintiffs

By: _____
Joseph C. Bird
Pro hac vice application pending
Law Offices of Joseph C. Bird, PLLC
573 Nakomis Trail
Lake Orion, MI 48362
(248) 909-4235
advocatejcb@aol.com
Attorney for Plaintiffs

**JURY DEMAND**

Relators demand a trial by jury.

Respectfully submitted on this 18th day of September, 2014.

By: _____
Michael M. Steinmetz
Bar No. M53164
Garson, Segal, Steinmetz, Fladgate, LLP
164 West 25th Street, Suite 11R
New York, NY 10001
Telephone (212) 380-3623
Facsimile (347) 537-4540
Local Counsel

By: _____
Brian H. Mahany
Pro hac vice application pending
Mahany&Ertl
1437 Prospect Ave., Suite 200
Milwaukee, WI 53202
Telephone (212) 380-3623
Facsimile (347) 537-4540
brian@mahanyertl.com
Lead Counsel for Plaintiffs

By: _____
Joseph C. Bird
Pro hac vice application pending
Law Offices of Joseph C. Bird, PLLC
573 Nakomis Trail
Lake Orion, MI 48362
(248) 909-4235
advocatejcb@aol.com
Co-Lead Counsel for Plaintiffs